IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BROOKE TILLEY and CHAD TILLEY, for and on behalf of their minor child, A.T., <br><br> Plaintiffs, <br> v. <br><br> THOMAS EDISON CHARTER SCHOOL NORTH, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD <br><br> Case No. 1:22-cv-00105-TS-CMR <br><br> Judge Ted Stewart |

This matter is before the Court on Defendant Thomas Edison Charter School North's Motion for Judgment on the Administrative Record.[1] For the reasons discussed herein, the Court will grant the Motion in part and deny it in part.

I. BACKGROUND

A.T. attended Thomas Edison Charter School North ("Thomas Edison") from kindergarten through fifth grade. In the middle of his fifth-grade year, A.T.'s parents, Brooke and Chad Tilley, filed a due process complaint alleging violations of the Individuals with Disabilities Education Act ("IDEA").[2] The due process complaint alleged that A.T. suffered from "Convergence Insufficiency and Deficient Saccadic Eye Movements."[3] Additionally, it alleged that A.T. was diagnosed with a "Specific Learning Disability with impairment in reading

---

[1] Docket No. 32.

[2] 20 U.S.C. § 1400, et seq.

[3] Docket No. 21, at 12.

and writing . . . in addition to Attention Deficit Disorder, Combined Type, mild, Phonological Disorder, Unspecified Anxiety Disorder, and Motor Tic Disorder, chronic."[4]

The due process hearing was held in spring 2022. The Utah Board of Education hearing officer issued the following findings in June 2022:

- Between the beginning of the 2020-2021 school year and February 18, 2021, Thomas Edison failed in its child find obligation and unreasonably delayed evaluation of A.T. for special education, which likely impeded A.T.'s progress.
- Thomas Edison failed to consider Extended School Year ("ESY") for A.T. during the summer of 2021, which likely impeded A.T.'s progress.
- The bulk of the failure for A.T.'s lack of progress during the 2021-2022 school year falls on the Tilleys for unilaterally pulling him out of class and ostensibly homeschooling him throughout the year. Although accommodations in the IEP were in place, the Tilleys stopped bringing A.T. to school.
- Thomas Edison also made procedural errors during the 2021-2022 school year which included: failing to provide prior written notice of options considered and rejected in the September 14, 2021 IEP Amendment; failing to send the prior written notice prepared in October for the Tilleys; and failing to send any other prior written notice to the Tilleys between the time the IEP Amendment had expired and December 8, 2021, when it issued a prior written notice as part of the referral for evaluation at the Utah Schools of Deaf and Blind ("USDB"). These procedural errors complicated the IEP process, which impacted A.T.'s access to special education and related services.

---

[4] *Id.*

- The hearing officer has no jurisdiction over the question of attorney fees and costs.
- To the degree the hearing officer can order reimbursement of medical services, the hearing officer declines to do so.[5]

In making these determinations, the hearing officer concluded that "both parties bear some of the blame for A.T.'s lack of progress."[6] He specifically found that Thomas Edison made procedural errors in failing to provide a clear offer of FAPE and any prior written notice and the Tilleys were "responsible for unilaterally keeping A.T. home from school and complicating efforts to develop a new IEP."[7] The hearing officer ordered compensatory education services for the delay in evaluating A.T.'s suspected disabilities from the beginning of A.T.'s fourth-grade year until the new consent form was signed mid-year in February 2021, the missed opportunity to provide ESY during summer 2021, and making procedural errors during A.T.'s fifth-grade school year in 2021-2022.[8] He ordered up to 60 hours in reading, up to 225 hours in spelling and writing, and up to 18 hours in speech and language.[9]

Now before this Court, Plaintiffs challenge three aspects of the hearing officer's decision and seeks attorney's fees and costs. Defendant moves for judgment on the administrative record.

---

[5] Docket No. 41, at 37 (SEALED). Although Docket No. 41 is sealed, the portions the Court cites to are predominantly the Hearing Officer's decision, which is published. Docket No. 40, at 2. While the Court cites to other portions of Docket No. 41 and Docket No. 43-1, which are also sealed, the Court strives to do so sparingly and only when necessary for the Court's analysis in this matter.

[6] *Id.* at 34 (SEALED).

[7] *Id.* at 34–35 (SEALED).

[8] *Id.* at 36 (SEALED).

[9] *Id.* at 37–38 (SEALED).

## II. LEGAL STANDARD

The IDEA establishes a "broad requirement for states to provide students with free, appropriate public education, or 'FAPE,' but relies on specific federal and state regulations for implementation."[10] Any party aggrieved by the findings and decisions made by a hearing officer in an IDEA case, "shall have the right to bring a civil action."[11]

Courts are to employ a unique standard of review in IDEA cases, one less deferential than that typically applied in review of administrative decisions.[12] In IDEA cases, courts apply a "modified de novo" standard under which a court reviews the administrative record and bases its decisions on the preponderance of the evidence.[13] In doing so, courts "must give 'due weight' to the hearing officer's findings of fact, which are considered *prima facie* correct."[14] The court's review "must maintain the character of review and not rise to the level of a *de novo* trial."[15]

## III. DISCUSSION

Plaintiffs allege that the hearing officer committed three errors contrary to the IDEA by: (1) failing to reimburse Plaintiffs for the payments they made for identification and evaluation services related to A.T.'s special education; (2) failing to order a compensatory award for psychological and emotional services; and (3) giving the Defendant sole discretion in

---

[10] *D.T. ex rel. Yasiris T. v. Cherry Creek Sch. Dist. No. 5*, 55 F.4th 1268, 1273 (10th Cir. 2022) (citing 20 U.S.C. § 1412(a)(1)).

[11] 20 U.S.C. § 1415(2)(A).

[12] *Thompson R2-J Sch. Dist. v. Luke P. ex rel. Jeff P.*, 540 F.3d 1143, 1149 (10th Cir. 2008).

[13] *Murray ex rel. Murray v. Montrose Cnty. Sch. Dist. RE-1J*, 51 F.3d 921, 927 (10th Cir. 1995); *see also* 20 U.S.C. § 1415(i)(2)(C).

[14] *L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004) (citation omitted).

[15] *Id.* (citation omitted).

determining A.T.'s placement for the compensatory services. Further, Plaintiffs assert that as the prevailing party they are entitled to costs and attorney's fees. Defendant moves for judgment on the administrative record asserting that Plaintiffs fail to demonstrate error. The Court will address each challenge and the request for attorney's fees in turn below.

   A. Reimbursement

Plaintiffs argue that the hearing officer erred in failing to order reimbursement for costs and expenses related to Dr. Krauskopf's assessment of A.T. and Dr. Cole's assessment and subsequent therapy.

The record and the Order show that in March 2021, Thomas Edison initiated a "comprehensive psychoeducational assessment for A.T.,"[16] after which an IEP meeting was timely held on May 4, 2021. The IEP identified A.T. with a "'specific learning disability' classification in the areas of reading and written language."[17] Unbeknownst to Thomas Edison, on May 3, 2021, the Tilleys took A.T. to Dr. Cole, an optometrist. Dr. Cole diagnosed A.T. with "moderate convergence insufficiency and deficient saccadic eye movements," and recommended an in-office vision therapy program, which A.T. attended from May to August 2021.[18] The Tilleys provided this information to the IEP team and the team made adjustments to the IEP during the May 4th meeting. Dr. Cole provided classroom accommodation recommendations to the Tilleys in July 2021, though he testified at the hearing that the accommodations were not considered mandatory. In February 2022, Dr. Cole concluded that the convergence insufficiency had resolved.[19]

---

[16] Docket No. 41, at 19 (SEALED).

[17] *Id.* (SEALED).

[18] *Id.* at 20–21 (SEALED).

[19] *Id.* at 21 (SEALED).

The Tilleys did not bring A.T. to school at the start of his fifth-grade year in 2021. Ms. Tilley testified that the services provided at the end of A.T.'s prior school year caused A.T. eye strain, headaches, and emotional breakdowns. Plaintiffs stated they would not bring A.T. back until a new IEP incorporating Dr. Cole's July recommendations was put into place. The IEP team met with the Tilleys in September 2021, during which the team amended the IEP to include accommodations such as enlarged print, a slanted work surface, and limited time at school with increasing attendance.[20] In October 2021, the Tilleys were frustrated and felt that the accommodations were not being followed. Because of that, they pulled A.T. from the school. Subsequent IEP meetings were delayed until the team met with the Tilleys in early December 2021. At that meeting, Thomas Edison asked for A.T. to be evaluated by USDB. Ms. Tilley signed the consent, which indicated the areas to be assessed were adaptive behavior and vision. At the same meeting, the Tilleys told Thomas Edison they would obtain a neuropsychological evaluation and would have the results by the next meeting in early January. The USDB report made eleven recommendations for accommodations. Another IEP was not scheduled or held because Plaintiffs filed a due process complaint on January 25, 2022.

In late January, Dr. Krauskopf released A.T.'s neuropsychological report with a list of recommendations for parents and the school. The hearing officer noted that "[m]any of the recommended accommodations were being implemented by [Thomas Edison] in September and October and some were similar to the recommendations made by USDB."[21]

Defendant argues that because Plaintiffs "unilaterally made the decision to have A.T. evaluated by Dr. Cole and Dr. Krauskopf" and removed A.T. from school without giving

---

[20] *Id.* at 22 (SEALED).

[21] *Id.* at 25 (SEALED).

Thomas Edison an adequate opportunity to address their concerns, the hearing officer did not err in declining reimbursement.[22] Plaintiffs counter that their decision to obtain these services "arose out of Defendant's failure to act."[23] They cite to 20 U.S.C. § 1412(a)(11)(B) to argue that the cost of a FAPE is not to be borne by the parents; however, this statute does not support the contention that parents are entitled to public reimbursement for all costs associated with evaluations and treatment. Under 34 C.F.R. § 300.502(b)(1), a parent has the right to an Independent Education Evaluation ("IEE") at public expense if the parent disagrees with an evaluation obtained by the public agency. The USDB and Dr. Krauskopf's evaluations were completed at roughly the same time.[24] There was also a psychological evaluation conducted in the spring of 2021, before the USDB evaluation. The Tilleys did not request that the evaluation by Dr. Krauskopf be at public expense, as required under § 300.502.[25] Therefore, the Court finds that Plaintiffs fail to show the hearing officer erred in denying reimbursement for the evaluation.

Similarly, Plaintiffs do not demonstrate, and the record does not support, that the hearing officer erred in declining to order Thomas Edison to reimburse the Tilleys for the evaluation and therapy by Dr. Cole. The hearing officer's decision does not include a finding that the Tilleys requested reimbursement. Ms. Tilley testified that they did not request reimbursement for Dr.

---

[22] Docket No. 32, at 11–12.

[23] Docket No. 39, at 16.

[24] *See B.D. v. Eldred Cent. Sch. Dist.*, No. 22-CV-03637, 2023 WL 3025308, at *10–11 (S.D.N.Y Apr. 20, 2023) ("There is simply no entitlement to a private evaluation before a public one has been taken because Plaintiffs cannot know whether the public evaluations 'falls short' before it even exists. . . . [The Hearing Officer's] determination that Plaintiffs were not entitled to reimbursement for the . . . private neuropsychological evaluation is, accordingly, affirmed.").

[25] Docket No. 41, at 59 (SEALED) ("Q. Did they ever provide you with a permission . . . to do a pyscho-neurological assessment? Mr. Tilley. No."). Mr. Tilley testified about submitting an IEE for speech. His testimony and the record do not reflect there was an IEE requested for the neuropsychological evaluation. Docket No. 43-1, at 100.

Cole's evaluation. And the record is not clear about how or when they requested reimbursement for the ongoing therapy.[26] The Court finds that Plaintiffs fail to demonstrate the hearing officer erred in his decision declining reimbursement for payments related to Dr. Cole's services.

    B. Anxiety and Emotional Services

Plaintiffs also allege that the hearing officer erred by failing to order Thomas Edison "to provide A.T. with any appropriate related services to address A.T.'s anxiety which was either caused, or at least certainly exacerbated by [Thomas Edison's] failure to properly evaluate and shape A.T.'s education in accordance with his unique disabilities."[27] Defendant counters that Plaintiffs failed to preserve the issue and, even if they did, the hearing officer found that the services awarded were in line with what Dr. Krauskopf recommended.

Plaintiffs' due process complaint sought "all related services and equipment that [A.T's] vision disability requires," and "all related services and equipment that his intellectual disabilities require."[28] The due process complaint does not reference emotional or psychological services. "The party requesting the due process hearing shall not be allowed to raise issues . . . that were not raised in the [due process complaint] notice."[29] Therefore, the Court finds that Plaintiffs waived this issue.

However, even if the issue was not waived, the record before the Court does not support a finding that the hearing officer abused his discretion in not ordering compensatory services for

---

[26] Docket No. 43-1, at 33 (SEALED).

[27] Docket No. 21 ¶ 17.

[28] Docket No. 41, at 8 (SEALED).

[29] 20 U.S.C. §1415(f)(3)(B); see *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 170 (2d Cir. 2014) (concluding that a newly raised argument was forfeited where "parents did not raise th[e] issue in either their . . . due process complaint notice or their . . . amended notice.").

anxiety or other emotional issues. Dr. Krauskopf testified at the due process hearing about the recommendations in her report.[30] Her recommendation concerning anxiety states "[p]arents might wish to consider a course of psychotherapy to address [A.T.'s] anxiety."[31] Dr. Krauskopf testified that A.T.'s anxiety was environmentally-based, in contrast to genetic-based anxiety, for which she would recommend "we treat the environment to help him feel more confident and less stressed [and] get the right supports in place."[32] The record does not reflect that, but for Thomas Edison's inaction, A.T. would not have developed anxiety.[33] Further, the record demonstrates blame on both sides for A.T.'s lack of progress, which the hearing officer's decision also reflects. The Court finds that even if Plaintiffs did not waive this argument, the hearing officer did not abuse his discretion by declining to order compensatory services for psychological or emotional services.

 C. Compensatory Education Provider

 Plaintiffs argue that the hearing officer erred in giving Thomas Edison sole discretion to provide or contract out the compensatory education services for A.T. Plaintiffs assert, and Defendant acknowledges that after the hearing officer's decision, A.T. was enrolled in another public school.[34] Plaintiffs allege that Defendant has refused to provide the compensatory services

---

[30] Docket No. 41, at 50 (SEALED).

[31] *Id.* at 105 (SEALED).

[32] *Id.* at 49 (SEALED).

[33] Docket No. 43-1, at 5 (SEALED) (Ms. Tilley's testimony about how A.T. has panic attacks and anxiety when "he has to do anything school related" including work with her at home).

[34] Docket No. 21 ¶ 20; Docket No. 24 ¶ 15.

through a third party or his new school, instead only offering the services at Thomas Edison at a rate of four to five hours a day, four to five days a week.[35]

Defendant argues that Plaintiffs failed to preserve this issue by asking for Thomas Edison to provide the compensatory educational services and equipment in their due process complaint. However, this is not an issue of preservation but instead a change of circumstance, requiring the Court to exercise equitable relief.

"[T]rial judges in IDEA cases may 'hear additional evidence' and fashion 'appropriate relief.'"[36] Additional evidence may include evidence involving relevant events that occurred after the administrative hearing.[37] In an IDEA judicial review proceeding, the question of what additional evidence to admit "should be left to the discretion of the trial court."[38] "These powers of fact-finding and remedy-crafting, the Supreme Court has explained, entail 'broad discretion' and implicate 'equitable considerations.'"[39] "[A] court must exercise particularized discretion in its rulings so that it will consider evidence relevant, non-cumulative and useful in determining whether Congress' goal has been reached for the child involved."[40]

Therefore, given the change in circumstance, the Court will accept the additional evidence that A.T. has moved schools. Accordingly, the Court finds that it is equitable for A.T.

---

[35] Docket No. 21 ¶ 20.; Docket No. 41, at 68 (SEALED).

[36] *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521–22 (D.C. Cir. 2005) (citing 20 U.S.C. §§ 1415(i)(2)(B)(ii), (iii)).

[37] *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 759 (3d Cir. 1995) (citation omitted).

[38] *Id.* at 760.

[39] *Reid ex rel. Reid*, 401 F.3d at 522 (citing *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15–16 (1993)).

[40] *Susan N.*, 70 F.3d at 760; *M.S. ex rel. J.S. v. Utah Schs. For Deaf and Blind*, 822 F.3d 1128, 1136 (10th Cir. 2016) ("IDEA . . . allows for the presentation of additional evidence at the request of a party and empowers the district court to 'grant such relief as it determines is appropriate.'") (quoting 20 U.S.C. § 1415(i)(2)(C)(ii)).

to receive compensatory services from a third party and/or his current public school provided by Thomas Edison. After all, "[n]o parent should be compelled to keep her child in a school that continually has violated the child's IDEA rights in order to safeguard a future claim for compensatory education."[41]

Plaintiffs ask the Court to either order that funds equivalent to the value of the compensatory services be awarded to Plaintiffs in a trust or set funds aside in a separate account held by Defendant.[42] Defendant does not address how the funds should or could be managed. The Court orders the parties to submit briefing on the amount and how the equivalent funds could be best disbursed for A.T.'s compensatory education.

D. Attorney's Fees and Costs

"[The] IDEA provides that a court may award reasonable attorneys' fees 'to a prevailing party who is the parent of a child with a disability.'"[43] Under 20 U.S.C. § 1415(i)(3)(B)(I), a court may award fees for "work performed in both administrative proceedings and court actions."[44] "[T]he parents prevail when actual relief on the merits of the child's claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."[45]

---

[41] *Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 20 F.4th 835, 843 (4th Cir. 2021); *see also D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 497 (3d Cir. 2012) ("To comply with the IDEA, a school district no longer responsible for educating a child must still be held responsible for its past transgressions.").

[42] Docket No. 39, at 27.

[43] *M.S. ex rel. J.S.*, 822 F.3d at 1136 (quoting 20 U.S.C. § 1415(i)(3)(B)(I)).

[44] *Id.*

[45] *Id.* (quoting *Miller ex rel. S.M. v. Bd. of Educ. of the Albuquerque Pub. Schs.*, 565 F.3d 1232, 1247 (10th Cir. 2009)).

"[T]he level of a plaintiff's success is relevant to the amount of fees to be awarded."[46] Defendant states that an award for the underlying attorney's fees and costs requested "is not at issue in this motion."[47] "Where the plaintiff has failed to prevail on a claim that is distinct in all respect from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."[48] While there is no precise formula to do so, the Supreme Court has cautioned that courts must take certain considerations into account.[49]

Plaintiffs have not submitted any specific claim for attorney's fees and there is little briefing on the issue of attorney's fees and costs for both the underlying administrative action and the appeal. Therefore, the Court will order Plaintiffs to submit affidavits supporting attorney's fees and costs sought, and a brief employing the Tenth Circuit's attorney fees analysis, including whether Plaintiffs' unsuccessful claims are related to their successful ones under the IDEA,[50] after which Defendant may file a response.

---

[46] *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983).

[47] Docket No. 32, at 2 n.1.

[48] *M.S. ex rel. J.S. v. Utah Schs. for Deaf & Blind*, No. 2:13-CV-420-TS, 2017 WL 6596610, at *2 (D. Utah Dec. 26, 2017) (quoting *Hensley*, 461 U.S. at 440).

[49] *Hensley*, 461 U.S. at 437.

[50] *M.S. ex rel. J.S.*, 822 F.3d at 1138 ("If [plaintiff] lost on claims that were unrelated to the claims on which [she or he] succeeded, then no fee may be awarded for counsel's services on the unsuccessful claims. If, on the other hand, the district court concludes all claims raised [, successful and unsuccessful] . . . are related, it must consider the significance of the overall relief obtained by [plaintiff] in relation to the hours reasonably expended on the litigation.") (internal quotation marks and citations omitted).

## IV. CONCLUSION

It is therefore

ORDERED that the Defendant's Motion for Judgment on the Record (Docket No. 32) is GRANTED IN PART AND DENIED IN PART. It is further

ORDERED that Plaintiffs file affidavits supporting their request for attorney's fees and costs and a brief as outlined above within fourteen (14) days of this Order. Any response by Defendant must be filed within fourteen (14) days of Plaintiffs' brief. It is further

ORDERED that the parties brief the issue of how to calculate the monetary amount of compensatory services and how the funds should be distributed. Plaintiffs are to file their brief within fourteen (14) days of this Order. Any response by Defendant is due within fourteen (14) days of Plaintiffs' brief.

DATED December 12, 2023.

BY THE COURT:

_____
TED STEWART
United States District Judge