IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BROOKE TILLEY and CHAD TILLEY, for and on behalf of their minor child, A.T., <div align="center">Plaintiffs,</div> v. <br><br>THOMAS EDISON CHARTER SCHOOL NORTH, <div align="center">Defendant.</div> | MEMORANDUM DECISION AND ORDER GRANTING ATTORNEYS' FEES AND COSTS TO PLAINTIFFS AND ALLOTTING FUNDS FOR COMPENSATORY HOURS <br><br> Case No. 1:22-cv-00105-TS-CMR <br><br> Judge Ted Stewart |

The Court previously issued a Memorandum Decision and Order Granting in Part and Denying in Part Defendant's Motion for Judgment on the Record and ordered Plaintiffs to submit affidavits and briefing regarding their request for attorneys' fees.[1] The Court also ordered the parties to brief the issue of how to calculate the equivalent monetary amount of compensatory services and how such funds should be distributed. The parties have now fully briefed these issues. As discussed below, the Court will award Plaintiffs $47,264.40 in attorneys' fees and $375.00 in costs. Further, the Court will order Defendant to place $15,195.00 into an educational fund for A.T.'s compensatory education.

## I. BACKGROUND

This suit arose from a due process complaint alleging violations of the Individuals with Disabilities Education Act ("IDEA") filed by Brooke and Chad Tilley on behalf of their child A.T., against Thomas Edison Charter School North. A due process hearing was subsequently

---

[1] Docket No. 64.

held in Spring 2022, after which the Utah Board of Education hearing officer ordered compensatory education services for A.T. for up to 60 hours in reading, up to 225 hours in spelling and writing, and up to 18 hours in speech and language.[2] Plaintiffs subsequently challenged three aspects of the hearing officer's decision and sought attorneys' fees and costs before this Court. Defendant filed a Motion for Judgment on the Administrative Record thereafter. On December 12, 2023, this Court issued a Memorandum Decision and Order concluding that Plaintiffs failed to demonstrate that the hearing officer erred as to the first two claims and finding that a change in circumstance after the hearing officer's decision—A.T. moving schools—necessitated an alteration to the order requiring A.T. to receive compensatory education services from Defendant.[3] The Court did not find that the hearing officer erred. The parties subsequently briefed the issue of attorneys' fees and how the funds for equivalent compensatory education services should be valued, managed, and disbursed.

## II. DISCUSSION

### A. Attorneys' Fees and Costs

"[The] IDEA provides that a court may award reasonable attorneys' fees 'to a prevailing party who is the parent of a child with a disability.'"[4] Under 20 U.S.C. § 1415(i)(3)(B)(I), a court may award fees for "work performed in both administrative proceedings and court actions."[5] The district court must take into consideration whether the prevailing party's successful claims are related to their unsuccessful claims and if they are not, should exclude those hours spent

---

[2] Docket No. 41 (SEALED), at 37.

[3] Docket No. 64, at 10–11.

[4] *M.S. ex rel. J.S. v. Utah Schs. for Deaf & Blind*, 822 F.3d 1128, 1136 (10th Cir. 2016) (quoting 20 U.S.C. § 1415(i)(3)(B)(I)).

[5] *Id.*

pursuing the unsuccessful ones.[6] While there is no "precise rule or formula for these determinations[,] [t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."[7] "Where the plaintiff's claims arise out of a common core of facts, and involve related legal theories, the inquiry is more complex. In such a case, the most critical factor is the degree of success obtained."[8] While the district court must take into account these considerations, it "has discretion in determining the amount of a fee award."[9]

   1. Plaintiffs are the prevailing party.

   Under the IDEA, "the parents prevail 'when actual relief on the merits of the child's claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'"[10] Defendant concedes that Plaintiffs are the prevailing party at both the administrative and district levels.[11] As the prevailing party, Plaintiffs are entitled to attorneys' fees.

   2. Plaintiffs' successful claims are related to their unsuccessful claims.

   The Court next turns to whether the claims on which Plaintiffs prevailed are unrelated to Plaintiffs' unsuccessful claims.

---

[6] *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).

[7] *Id.* at 436–37.

[8] *M.S. ex rel. J.S.*, 822 F.3d at 1137 (quoting *Tex. State Tchers. Ass'n v. Garland Indep. Sch. Dist.*, 389 U.S. 782, 789 (1989)).

[9] *Hensley*, 461 U.S. at 437.

[10] *Miller ex rel. S.M. v. Bd. of Educ. of the Albuquerque Pub. Schs.*, 565 F.3d 1232, 1247 (10th Cir. 2009) (quoting *Urban by Urban v. Jefferson Cty. Sch. Dist. R-1*, 89 F.3d 720, 729 (10th Cir. 1996)).

[11] *See* Docket No. 67, at 2.

If the successful and unsuccessful claims are unrelated then, "the hours spent on the unsuccessful claim[s] should be excluded in considering the amount of a reasonable fee."[12] Unrelated claims are "distinctly different claims for relief that are based on different facts and legal theories."[13] Cases involving unrelated claims "are unlikely to arise with great frequency."[14]

Turning first to the administrative level, Plaintiffs asserted claims under the IDEA, which establishes a "broad requirement for states to provide students with free, appropriate public education, or 'FAPE.'"[15] The asserted claims alleged procedural violations and one substantive violation of the IDEA.

Plaintiffs raised the following claims under the IDEA: (1) Defendant failed to identify A.T. as a child with a disability for two years; (2) Defendant failed to properly maintain and disclose A.T.'s special education file to A.T.'s parents; (3) Defendant failed to evaluate A.T. for specific disabilities; (4) Defendant failed to include the IEP team in decisions; (5) Defendant failed to provide A.T. with special education and related services; and (6) as a result of these violations, A.T. was excluded from attending school at Thomas Edison and missed more than ten days resulting in an illegal change in placement.[16]

The hearing officer issued the following findings on the claims: (1) Defendant delayed in identifying A.T. as a child with a disability from the beginning of his fourth grade year (2020) until February 2021[17] and failed to consider Extended School Year ("ESY") for A.T. which

---

[12] *Hensley*, 461 U.S. at 440.

[13] *Id.* at 434.

[14] *Id.* at 435.

[15] *D.T. ex rel. Yasiris T. v . Cherry Creek Sch. Dist. No. 5,* 55 F.4th 1268, 1273 (10th Cir. 2022) (citing 20 U.S.C. § 1412(a)(1)).

[16] Docket No. 41 (SEALED), at 5–7.

[17] *Id.* at 36.

likely impeded A.T.'s progress;[18] (2) no finding as to this claim because Plaintiffs dismissed it prior to the hearing;[19] (3) the record did not show that Plaintiffs were prevented from actively participating as members of the IEP team; (4) Defendant provided the accommodations as agreed upon and made reasonable efforts to maintain an IEP that was reasonably calculated to help A.T. make progress;[20] and (5) Plaintiffs failed to bring A.T. to school and failed to seek an alternative placement despite Defendant following the IEP Amendment.[21] Further, the hearing officer concluded that Defendant made procedural errors during the 2021–2022 school year by failing to provide prior written notices to Plaintiffs.[22]

Plaintiffs assert that their successful and unsuccessful claims are related as they all fall under the IDEA, are all related to the special education needs of the same child, and are all related to the same Defendant.[23] Defendant does not argue that the claims at the administrative level are unrelated.

Plaintiffs prevailed on claims of procedural violations—delay in child find and failure to offer ESY. The hearing officer also found procedural violations during the 2021–2022 school year, but also placed blame on A.T.'s parents for failing to bring A.T. to school or seek another placement.[24] In making this finding, the hearing officer acknowledged the "complexity of the facts and resulting difficulty in allocating fault" in making his findings.[25] Plaintiffs were

---

[18] *Id.* at 37.

[19] Docket No. 65, at 9.

[20] Docket No. 41 (SEALED), at 32.

[21] *Id.* at 34.

[22] *Id.* at 37.

[23] Docket No. 65, at 10.

[24] Docket No. 41 (SEALED), at 35.

[25] *Id.*

unsuccessful in their claims that A.T. was not provided with special education and related services, that he was excluded from school, and that A.T.'s parents were excluded from IEP decisions. The Court finds that the claims are related as they arise out of a common set of facts and are based on related legal theories under the IDEA. The Court will therefore include time spent on all claims at the administrative level in calculating the lodestar amount.

Turning next to the proceedings before this Court, Plaintiffs alleged three claims in addition to the request for attorneys' fees and costs. They alleged that the hearing officer erred in (1) failing to reimburse Plaintiffs for the payments they made for identification and evaluation services related to A.T.'s special education; (2) failing to order a compensatory award for psychological and emotional services; and (3) giving Defendant sole discretion in determining A.T.'s placement for the compensatory services. The Court concluded that Plaintiffs failed to demonstrate the hearing officer erred as to the first two claims, and that a change in circumstance permitted the Court to accept the additional evidence that A.T. had moved schools and it was equitable for A.T. to receive compensatory services from a third party or his current school provided by Defendant.

Defendant asserts that the two unsuccessful claims are not related to the successful one because those claims were denied based on Plaintiffs' failure to request reimbursement and emotional services at the administrative level.[26] The Court does not agree with this assessment. All three claims were related to the hearing officer's findings and were based on the IDEA. As such, the Court concludes that Plaintiffs' unsuccessful claims are related to their successful one, and therefore, the Court will include time spent on all claims in calculating the lodestar amount.

---

[26] Docket No. 67, at 9.

3. Lodestar Amount

The Court next turns to the lodestar amount of Plaintiffs' attorneys' fees. Under the IDEA, attorneys' fees are determined using the lodestar method.[27] "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."[28] Plaintiffs request $52,622.25 in attorneys' fees. This amount includes the fees incurred by Plaintiffs for both the administrative and district court proceedings and excludes fees for attendance of IEP meetings, as prohibited by the IDEA.[29] Plaintiffs also request $2,403.58 in costs.[30] Plaintiffs do not delineate between fees for the administrative and district court proceedings. After review of Plaintiffs' billing log, the Court agrees with Defendant that it appears the fees attributable to the district court proceedings apply from June 27, 2022, on. Based on this, the fees attributable to the administrative proceedings total approximately $29,725.25, and those attributable to district court proceedings total approximately $22,897.00.

4. Reasonableness of Fees

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary."[31] Defendant objects to the reasonableness of the fees based on inadequacy of the billing records. Defendant objects to

---

[27] *M.S. by and through J.S. v. Utah Sch. for the Deaf & the Blind*, No. 2:13-CV-420-TS, 2017 WL 6596610, at *5 (D. Utah Dec. 26, 2017).

[28] *Hensley*, 461 U.S. at 437.

[29] *See* 20 U.S.C. § 1415(i)(3)(D)(ii) ("Attorneys' fees may not be awarded relating to any meeting of the IEP team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for mediation.").

[30] Docket No. 73, at 13.

[31] *Hensley*, 461 U.S. at 434.

nearly every line item on Plaintiffs' counsel's billing log as "vague," "block billing" and/or "excessive time expended on purely clerical/administrative tasks."[32] In particular, Defendant argues that the descriptions of time billed makes it impossible to determine whether the fees were from Plaintiff Brooke Tilley's separate suit against Defendant for employment discrimination or from this case. Plaintiffs' counsel asserts this contention is unfounded and that the two suits are billed under a different case file and not combined.[33] However, the entry dated 12/30/2021 states "Calls and emails to client; email to Thomas Edison Charter School and emails to and from Waiva Charlesworth." Defendant states that Ms. Charlesworth is involved with Brooke Tilley's unrelated employment discrimination case.[34] Plaintiffs bear the burden establishing entitlement to an award and documenting the appropriate hours expended; they have failed to do so here. Therefore, the Court will reduce the award amount by $106.25, which is the amount billed for the 12/30/2021 line item.

Defendant asserts that a large number of the line items are "block billing." Plaintiffs respond that the tasks were logged in a single entry when "undertaken sequentially."[35] The Tenth Circuit "has not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block billing."[36] "While block billing is generally discouraged, what ultimately matters is whether 'the records sufficiently allow the reviewing

---

[32] Docket No. 67, at 12–13, 28–30.

[33] Docket No. 73, at 11.

[34] Docket No. 67, at 28.

[35] Docket No. 73, at 11.

[36] *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000).

court to determine the time allotted to specific tasks and the reasonableness of that time.'"[37] After review of the billing log and Defendant's objections, the Court finds that the tasks in the log are sufficient to allow for review. Further, a number of Defendant's claims of block billing do not reflect this practice, in particular, the entries related to the due process hearing dates and the entries related to drafting the closing argument brief.[38] The Court will therefore decline to reduce the award based on block billing. Additionally, after careful review of the billing log, the Court does not find the description to be vague or the fees excessive, as Defendant asserts and declines to reduce fees based on those grounds.

5. Results obtained

"Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."[39] "[T]he district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[40]

Defendant argues that Plaintiffs achieved only limited success at the due process hearing and therefore attorneys' fees should be reduced. Defendant contends that Plaintiffs prevailed on only 30% or four of thirteen issues raised and are therefore only entitled to 30% of the fees requested.[41] The Tenth Circuit and other precedent has made abundantly clear that such a

---

[37] *Utah Physicians for a Healthy Env't, Inc. v. Diesel Power Gear, LLC*, No. 2:17-cv-0032-RJS, 2022 WL 2474013, at *4 (D. Utah July 6, 2022) (quoting *Cadena*, 224 F.3d at 1215) (alterations in original).

[38] *See* Docket No. 67, at 28.

[39] *Hensley*, 461 U.S. at 440.

[40] *M.S. ex rel. J.S.*, 822 F.3d at 1138 (quoting *Hensley*, 461 U.S. at 435).

[41] Docket No. 67, at 4–6.

9

"mechanical analysis" that awards fees in proportion to successful claims is improper.[42] Accordingly, the Court rejects this methodology.

Instead, "the district court must make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar."[43] At the administrative level, Plaintiffs sought the following relief: Defendant to provide all related services and equipment related to A.T.'s vision disability and intellectual disability; Defendant to provide compensatory education services of not less than two years; Defendant to reimburse Plaintiffs for all testing and assessments performed for A.T. in determining services and special education; Defendant to require its employees to undergo training relative to IDEA compliance, the IDEA process, and prompt identification and evaluation of disabled children; the IEP be required to consider any additional efforts, services, or modifications to restore trust among the IEP team; and reimbursement of the Tilley's costs and reasonable attorneys' fees.[44]

The hearing officer ordered up to 60 hours of compensatory services in the area of reading, up to 225 hours of compensatory services in the area of spelling and writing, and up to 18 hours of compensatory services in speech/language, provided over a three-year period.[45] Defendant was given sole discretion to decide whether to provide the services or whether to contract the compensatory services out. The hearing officer declined to provide reimbursement.

---

[42] *M.S. ex rel. J.S.*, 822 F.3d at 1137.

[43] *Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir. 1995) (quoting *Hensley*, 461 U.S. at 436).

[44] Docket No. 41 (SEALED), at 8.

[45] *Id.* at 37–38.

Plaintiffs ask the Court to also consider that the Utah State Board of Education ("USBE") "issued a corrective action plan which required TECS to undergo two hours of professional learning to all special education teachers, related service providers, and LEA representatives to IEP Meetings on the topics of child find requirements, extended school year services, and prior written notice."[46] The corrective action plan letter states that USBE has general supervision over local education agencies, like Defendant.[47] The letter also states that the corrective action plan was a result of the administrative decision and order and under USBE general supervision authority and obligation to ensure that noncompliance is corrected in a timely manner.

Defendant objects to consideration of the two hours of professional learning as part of the results obtained and argues that it was not obtained at the due process hearing and therefore is not material to results obtained. This ignores that the USBE states that it issued the corrective action plan as a result of the hearing officer's findings, and ergo, Plaintiffs' due process complaint. However, the Court acknowledges that this only represents a very small measure of success, and the bulk of Plaintiffs' success at the administrative level is the award of approximately 300 compensatory service hours.

Based on the significant compensatory service hour award and limited employee training success, and the lack of success regarding specific services provided and reimbursement, the Court will award Plaintiffs 90% of the lodestar amount of the administrative proceeding fees.

Turning to the results obtained at the district court, Plaintiffs sought reimbursement of costs of evaluation and therapy, compensatory services related to A.T.'s anxiety and other emotional disabilities, and compensatory services provided by a third party instead of Defendant,

---

[46] Docket No. 65, at 11–12; Docket No. 65-2, at 2.

[47] Docket No. 65-2, at 1.

in addition to attorneys' fees.[48] This Court concluded that a change in circumstance warranted compensatory service hours to be provided by a third party instead of Defendant, but did not find error in the hearing officer's failure to order reimbursement or failure to order services related to anxiety and other emotional issues. Based on review of the briefs and attached exhibits in this case, the Court finds that the issue of where A.T. received compensatory hour instruction was a central issue,[49] on which Plaintiffs were successful. Accordingly, the Court will award 90% of the lodestar amount of district court proceeding fees.

Plaintiffs argue that Plaintiffs are entitled to a full award of their attorneys' fees because Congress deliberately intended for a prevailing parent to be compensated for all time reasonably expended on a case except in limited circumstances.[50] The Court does not find this argument persuasive. The cases Plaintiffs cite to adopt the same approach employed by this Court and adopted by the Tenth Circuit.[51] These cases do not provide a legal basis for the Court to award full attorneys' fees as Plaintiffs argue.

6. The settlement offer was not more favorable.

The IDEA places certain restrictions on the award of attorneys' fees. Relevant here, 20 U.S.C. § 1415(i)(3)(D) states that attorneys' fees may not be awarded, and costs may not be reimbursed for services performed after the time of a written offer of settlement to a parent if: (1) the offer is made ten days before a proceeding begins; (2) the offer is not accepted within ten

---

[48] Docket No. 21, at 7–8.

[49] *See* Docket No. 73-1.

[50] Docket No. 73, at 9–14.

[51] *Phelan v. Bell*, 8 F.3d 369 (6th Cir. 1993); *City of Riverside v. Rivera*, 477 U.S. 561 (1986).

days; and (3) the court or administrative hearing officer finds that the relief obtained is not more favorable to the parents than the offer of settlement.

Defendant argues that the Court should reduce the fees based on the pre-hearing settlement offer. While there was a settlement offer made more than ten days before the hearing and Plaintiffs did not accept the offer, the Court cannot conclude that offer of settlement was more favorable than the relief obtained. The settlement offer contained the following relevant terms: reimbursement of $500 to Chad and Brooke Tilley and $3,000 in attorneys' fees; and educational services for A.T. consistent with the September 14, 2021 IEP if A.T. resumed attendance. In contrast, the administrative officer awarded compensatory education services totaling approximately 300 hours. Therefore, the Court does not find that 20 U.S.C. § 1415(i)(3)(D) bars an award of attorneys' fees subsequent to the settlement offer.

7. Plaintiffs did not unnecessarily protract the proceedings.

Defendant next argues that under 20 U.S.C. § 1415(i)(3)(F) a reduction in attorneys' fees is warranted. Under § 1415(i)(3)(F)(iv), when a court finds that "the parent or parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy . . . the court shall reduce, accordingly, the amount of the attorneys' fees awarded." Defendant argues that because the Court determined that the hearing officer did not err as to the first and second claims raised by Plaintiffs that Plaintiffs unreasonably protracted this matter. The Court does not agree. The Court did not find that Plaintiffs' unsuccessful claims were frivolous and declines to do so now. Nor is there evidence that Plaintiffs brought these claims to prolong these proceedings. The Court will therefore not reduce the award for unreasonable protraction.

8.  The time spent and legal services furnished were not excessive.

Defendant argues that the fee award should be reduced because Plaintiffs' claims before the Court lacked novelty or complexity. 20 U.S.C. § 1415(i)(3)(F) provides that the district court shall reduce a fee award if it finds that "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." Defendant points to Plaintiffs' waiver of the reimbursement and emotional services claim to argue for a reduction of the award. Despite ultimate shortcomings in Plaintiffs' claims, the record does not support, and Defendant does not demonstrate, that the time spent and legal services furnished were excessive based on the claims asserted. As such, the Court declines to reduce the fee award on this basis.

Based on the foregoing, the Court will order Defendant to pay $47,264.40 in attorneys' fees to Plaintiffs.

9. Costs

Plaintiffs originally sought $3,660.67 in costs; however, they amended their request to $2,403.58 after Defendant objected.[52] Defendant asserts that Plaintiffs are only entitled to the $375.00 filing fee cost.

Fed. R. Civ. P. 54(d)(1) provides that "costs—other than attorneys' fees—should be allowed to the prevailing party." "Taxable costs are limited to relatively minor, incidental expenses such as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, [and] docket fees."[53] "'[C]osts almost always amount to less than the successful litigant's total expenses in connection with a lawsuit.'"[54] "The cost of 'deposition

---

[52] Docket No. 73, at 13.

[53] *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012).

[54] *Id.* (quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2666, at 203).

transcripts or copies' is taxable under § 1920 if they 'were offered into evidence, were not frivolous, and were within the bounds of vigorous advocacy.'"[55]

Plaintiffs seek costs for four deposition transcripts. After review of the record, Plaintiffs did not enter these transcripts into evidence until they filed their Reply, after Defendant argued the transcripts were not taxable. Plaintiffs assert that these transcripts were attached as exhibits for the purpose of showing that Defendant was unnecessarily protracting the litigation.[56] This last-ditch effort to attach a page or two of each deposition as an exhibit to their Reply does not demonstrate that the transcript costs were necessarily obtained for use in this case as is required under § 1920. Therefore, the Court will award $375.00 in fees to Plaintiffs.

B.  Educational Fund

In finding a change in circumstance and permitting A.T. to receive compensatory services via third party, the Court ordered the parties to brief the issue of how to calculate and administer the funds.

Plaintiffs assert that for A.T. to receive the hours at the Dyslexia Center of Utah it will cost $600 per month for four 45-minute sessions a week to obtain the compensatory time allotted.[57] The hourly rate is $50.00, therefore the total for the 285 hours ordered would be $14,250.00.[58] For the 18 hours of speech therapy, Plaintiffs assert that it will be approximately $75 per hour, totaling $1,350.00.

---

[55] *Valdez v. Macdonald*, 66 F.4th 796, 837 (10th Cir. 2023) (quoting *In re Williams Sec. Litig.-WGC Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009)).

[56] Docket No. 73, at 12–13.

[57] Docket No. 66, at 3.

[58] Plaintiffs assert that this would total $21,600.00, however, the information provided and math do not support this amount.

Defendant asserts that the amount awarded should reflect the hourly wages it pays school employees, which range between $18 to $37 per hour for reading and writing instruction, and $37.40 to $52.50 per hour for speech and language instruction. Based on these amounts, Defendant asserts that the award should range from $5,130.00 to $10,545.00 for reading and writing hours and $673.20 to $945.00 for speech and language hours.

Based on consideration of the foregoing, the Court will order $50 per hour for reading and writing instruction, and $52.50 per hour for speech and language instruction, totaling $15,195.00 ($14,250.00 + $945.00).

Turning next to how the funds will be managed and disbursed, the parties agree that Defendant shall maintain an educational fund for a period of three years, payable to providers of Plaintiffs' choosing for those services awarded. The parties disagree about when Defendant must make disbursements to parties; Plaintiffs request twenty days after receipt of any invoice or receipt, while Defendant asks for monthly disbursements for administrative efficiency. The Court will order Plaintiffs to promptly provide invoices or receipts to Defendant, and Defendant to disburse the requested funds within thirty days of receipt.

## III. CONCLUSION

It is therefore

ORDERED that Plaintiffs are awarded $47,264.40 in attorneys' fees and $375.00 in costs, to be paid by Defendant; It is further

ORDERED that Defendant shall create and manage an educational fund for the purpose of financing compensatory education for A.T for a period of three years; It is further

ORDERED that Defendant is to place $15,195.00 into the educational fund for A.T.'s compensatory education; It is further

ORDERED that Plaintiffs shall promptly provide receipts or invoices for compensatory education services to Defendant, after which Defendant has thirty days to disburse the funds for payment; It is further

ORDERED that any amount remaining in the educational fund after three years shall be returned to Defendant.

DATED June 17, 2024.

BY THE COURT:

_____
TED STEWART
United States District Judge